NELSON STAPLES, PLAINTIFF IN ERROR, VS. T. HARTRIDGE
& CO., DEFENDANT IN ERROR.

This was an action of assumpsit, brought by the plaintiff in error against the defendant in error in the Circuit Court of Duval county. The bill of exceptions, signed by the Judge, states that the jury rendered a verdict in favor of plaintiff for $672 01; that on the day following the said verdict the defendant's counsel entered a motion for a new trial upon the following grounds, to wit:

1st. That the verdict is contrary to evidence and the weight of evidence.

2d. That the ruling of the Court was contrary to law.

3d. That the defendant was taken by suprise.

4th. On the ground of newly discovered evidence.

Whereupon, and before the defendant's counsel proceeded with his argument, the Court announced to him that it had made no ruling on the point, and, the counsel not pressing the other points, the motion for a new trial was denied; that on the 27th day of October, A. D., 1858, another motion for reconsideration of the said motion for a new trial was argued, which second motion was entered upon the motion docket on the 26th day of October, A. D. 1858, and in support of said motion the said counsel for the defendant filed an affidavit, setting forth the grounds of said motion.

The counsel of the plaintiff objected to the said motion:

1st. That he had no notice of said motion.

2d. That the ground of this motion had already been adjudicated by the denial of a new trial under the first motion, and for other reasons, to wit: That the defendant's counsel having abandoned his defence on the trial and

consented to a verdict, he could not be entitled to another trial.

The Court, upon the hearing of said motion, granted a new trial upon the said affidavit of defendant's counsel alone.

To which order of the Court, allowing and granting a new trial in said cause, the counsel for plaintiff then and there excepted and prayed the Court to seal his bill of exceptions, which was done accordingly.

The law of this State, entitled " an act in addition to and amendatory of the several acts concerning writs of error and appeals to the Supreme Court," appoved January 7, 1853, (Pamphlet Laws 1852–'3, page 100,) in the first section provides :

" That from and after the passage of this act, all orders and judgments of the Circuit Courts of this State, made and passed in any cause therein, wherein the said Courts shall allow and grant, or shall refuse to allow and grant any motion for new trial, or any motion to amend the pleadings, or to file new or additional pleadings, or to amend the record of any cause during the term of the Court in which it was determined, or shall refuse to allow and grant a motion for continuance of the cause, shall and may be assigned for matter and cause of error, upon any writ of error sued out or appeal taken to the Supreme Court, and the said Supreme Court shall hear and determine the matter so assigned for error, in the same manner and under like rules and regulations as in other cases."

Te second section provides :

"That in all cases enumerated in the preceding section of this act, the party aggrieved by any such order or judgment, shall make his exception thereto in writing, and shall insert therein all such evidence, affidavits, amendment of pleadings, and all other matters which do not pro-

perly appear of record, which were considered by the Court below, or which were offered to the consideration of the Court below, and should have been considered in the making and passing said order and judgment, and the said exception shall be tendered to the Judge of the Circuit Court for his signature, in the same manner and under the same rules, regulations and provisions as bills of exception are now by law made up, signed and made part of the record."

The third section provides :

" And whereas, the construction which has been given to the law regulating appeals in cases in equity, whereby appeals are refused after the merits of the cause have been passed upon, because of some reference for account, or some other matter, is productive of unnecessary delay and inconvenience, and sometimes of useless expense in taking the accounts, because of the reversal of the decree ascertaining the rights of the parties litigant :

*Be it therefore enacted*, That appeals may be taken and prosecuted from any interlocutory order, decision, judgment or decree of the Circuit Courts of this State, when sitting as Courts of Equity: *Provided always, however*, That such appeal shall not operate as a supersedeas, unless the Judge of the Circuit Court, or a Justice of the Supreme Court, on inspection of the record, shall think fit to order and direct a stay of proceedings : *And provided further*, That no appeal so allowed shall operate as a supersedeas, except on the conditions now prescribed by law in cases of appeals from final judgments and decrees."

*Philip Fraser* for plaintiff in error :

The Supreme Court of this State is a creature of the Constitution. Its jurisdiction is merely appellate.—Const., art. 5, sec. 2.

The appellate jurisdiction of this Court is to be exercised according to the regulations in the manner and at the time prescribed by the Legislature.

The act of July 25th, 1845, adopts the acts of the Legislative Council of the Territory, then in force, regulating appeals and writs of error, and makes them applicable to the Supreme Court.—Thompson's Digest, 51.

By the act of February 10th, 1832, sec. 1, it is provided that the party aggrieved may appeal from any *final* sentence, judgment or decree of the Circuit Courts to the Supreme Court. Writs of error were required to issue as a matter of right, and on demand, from the office of the Clerk of the Supreme Court or from the Clerk of the Court in which *such* judgment had been rendered, that it is a *final* judgment.—Thompson's Digest, pp. 446–'7.

By the act of February 17th, 1833, a party aggrieved by a rule of Court, or other summary order, which is in effect a *judgment* for the payment of money or other thing, may have an appeal, writ of error or *certiorari.*—Thompson's Dig., p. 448.

By the 5th section of the act of February 10th, 1832, it is made the duty of the Judges of the Supreme Court, on an appeal or writ of error, to examine the record, to reverse or affirm the judgment of the Court below, to award *a new trial* in the Court below, or to give such judgment, sentence or decree as the Court below ought to have given, or as to them may appear according to law. These are the powers incident to the Court as the law stood previous to the act of 1853. Under this law, the Court had no power to revise the proceedings of the Court below, either at law or in Chancery, until after a final judgment, sentence or decree.—Thompson's Digest, 449.

At common law, appeals from Courts of Equity might be brought upon any interlocutory matter, but at law, a

writ of error could be brought upon nothing but only a definitive judgment.—2 Black. Com., 46.

In this respect our law differs from the common law, because, under our statute, appeals and writs of error in law and chancery causes were put upon the same basis, and would not lie until after a *final* judgment, *sentence* or *decree*.

It becomes us, then, to enquire whether the Legislature, by the act approved January 7th, 1853, intended to change or alter the law as it stood before, and, if so, in what respect the law has been altered, amended, restricted or enlarged in its operations by that act, and we must draw the intention of the Legislature from the language and provisions of the act itself, so far as this can be done. It is humbly conceived that the Legislature intended to extend the remedy by appeal and writ of error to a new class of cases not provided for by the old law. The old law provided for appeals and writs of error from *final* judgments and decrees. The new law provides for appeals and writs of error from different kind of judgments, viz: "All orders and judgments of the Circuit Courts of this State, made and passed in any cause therein"—*not final judgments,* but judgments wherein the said Courts shall allow and grant, or shall refuse to allow and grant, any motion for a new trial or any motion to amend the pleadings, or to file new or additional pleadings, or to amend the record of any cause during the term of the Court at which it was determined, or shall refuse to allow and grant a motion for the continuance of the cause—the orders and judgments of the Court upon these *motions*, and not a final judgment upon the merits, *may be assigned for matter and cause of error* upon *any* writ of error sued out or appeal taken to the Supreme Court, and the said Supreme Court shall hear and determine the matter so assigned for error—that is, the or-

ders and judgments upon these motions in the same manner and under the like rules and regulations as in other cases—that is, as in cases of writs of error and appeals from final judgments, for those are the only *other cases* known to the law.—Pamphlet Laws 1852–'3, page 100.

By the second section of the act of 1853, it is enacted, that in all the cases enumerated in the preceding section of this act, the party aggrieved by any *such* order or judgment—not final order or judgment, but such order or judgment made upon those motions—shall make his exception thereto in writing, and shall insert therein all such evidence, affidavits, amendment of pleadings and all other matters, which do not properly appear of record, which were considered by the Court below, or which were offered to the consideration of the Court below and should have been considered in (what?—the progress of the trial upon the merits? No. In making up of the final judgment in the cause? No. What then?) "the making and passing said order and judgment." "And the said exception shall be tendered to the Judge of the Circuit Court for his sig_nature in the same manner and under the same rules, regulations and provisions as bills of exception are now by law made up, signed and made part of the record."

The first section of the act of 1853 enumerates the particular orders and judgments upon which appeals and writs of error may be brought. The second section prescribes the manner and rules under which they shall be brought. When such orders and judgments have been made and passed, the remedy given by the Legislature is applicable. But has the Legislature appointed and fixed by the act any *time* when the party aggrieved may have the benefit of that remedy? So far as we can learn from the act itself, he is not postponed to a final judgment on

the merits. The bill of exceptions is to be tendered at once upon the making and passing of such orders and judgments. It is to contain such matter only as was considered, or ought to have been considered, upon the hearing of such motions in making and passing such orders and judgments, and not such matters as would arise in the course of a trial upon the merits, or as would be considered in making up and entering a final judgment.

From these considerations, it is evident that the Legislature intended that the remedy should be immediate. It is humbly conceived, that by the different modes of expression used in the first and third sections of the act of 1853, the Legislature meant nothing more than simply to provide, that at law appeals and writs of error could only be taken upon such orders and judgments as are made and passed upon the motions enumerated and specified in the first section of the act, whereas the parties in equity shall have a fuller and more extensive remedy, not limited to specified and enumerated orders and decisions, but applicable to *any* and all interlocutory orders, decisions, *judgments* or decrees. In other words, appeals may be taken from all interlocutory orders and judgments of the Court in equity, but only from those enumerated in the act at law, according to the rule that the mention or enumeration of particular matters excludes those matters not mentioned. That is, " when the law descends to particulars, such more special provisions must be understood as exceptions to any *general rules* laid down to the contrary, and the *general rules must not be alleged* in confutation of the special provisions."—Dwarris on St., 765; 5 Bing., 180, 492–'3.

The act thus far, then, can have no reference whatever to the *time* when appeals and writs of error shall be taken except so far as this, that the remedy is given as soon as

the *matter* arises which is made a cause of appeal by the act. The fourth section of the act seems fully to sustain this view. It is enacted by that section, "that this act shall not be construed so as to deprive either party from deferring and postponing the entry of his, her or their appeal until after the entry of the final decree *or end of the cause, as now prescribed by law*, nor shall such postponement of the appeal be decreed, held or taken as an acquiescence in the propriety of any interlocutory order or decree made in the progress of the cause, or any waiver of any error therein."

By this section, the Legislature evidently intended to leave it at the option of the party aggrieved to take his appeal instanter, when the order or decree complained of is made by the Court, or to wait till after a final decree or judgment in the cause, and provides that his delay till final judgment should not be taken as an acquiescence or waiver of any error in any interlocutory order or decree made in the progress of the cause. This section clearly embraces every case where an appeal is given by the act. If not, by what clause does it exclude any? It is clearly intended to include appeals at law as well as in equity, else, why designated a "final decree *or end of the cause?*" The Legislature certainly meant something more by the words "end of the cause" than a final decree in equity, and what other meaning can attach to those words than final judgment? It is as if the Legislature had said, "the party aggrieved shall not be deprived of the remedy given by this act though he may postpone his appeal until after a final judgment or decree." In order to fortify all the avenues of justice and to secure the party his remedy beyond all cavil, the Legislature goes still further and says, that such postponement shall not be held, decreed or taken as an acquiescence in the propriety of *any* interlocutory *order* or

decree, or *any* waiver of *any error therein*. Now, are we to say that this does not apply to all *orders* from which an appeal is given by this act, and that the words "order or decree" mean the same thing, and that therefore this sec_tion of the act refers to orders and decrees in equity alone? If so, then, by the application of the proper rules of con_struction, the privilege of waiting until a final decree or the end of a cause before appeal is granted by this section to *parties in equity only*, and parties at *law* must take their appeals before final judgment or they acquiesce and waive their right of appeal from those orders enumerated in the first section of the act, where the order complained of is made before final judgment. That is, if a postponement is provided for in equity causes alone, it is allowable in no other. Besides, if such a construction should be given to the act as that no appeal shall lie at law until after final judgment, then, in cases of arrest of judgment, there being no final judgment, the statute would be nugatory—the party would have no remedy.—2 Chitty Pr., 593.

The argument *ab inconvenienti* will apply to both sides of this question; for, if justice should be delayed by these appeals in some cases, it will be delayed by postponing them in others, as will be evident in this case. The hear-ing of this appeal will delay neither party, but a refusal to hear it till after final judgment will delay the plaintiff in-definitely.

The question, then, is, what is the intention of the act? If it is deducible from the act itself, that the Legislature intended to give appeals before final judgment or decree or the end of the cause, then is this appeal well taken.

*L. I. Fleming* for defendant in error.

The Supreme Court, after argument, dismissed the ap-peal, on the ground that the Court has no jurisdiction of

an appeal or writ of error taken in a cause at law before final judgment.

───────

HANCOCK, ADMINISTRATOR, APPELLANT, VS. TUCKER, AD-
MINISTRATOR, APPELLEE.

1. The rule that, on discovery of a fraud in a contract, the defendant should abandon and avoid claiming benefit by it; and, in case of a sale of goods, on discovery of unsoundness, that a return should be made by the vendee, is undoubted and indisputable, but not applicable to cases of sale of property of no value and when the subject purchased is not rightly an article of sale or of merchandize.
2. A new trial will not be granted, in case of conflicting testimony, when the weight of the evidence agrees with the verdict.

This case was decided at Tampa.

Appeal from the Circuit Court of Hillsborough county.

The opinion of the Court contains a statement of the facts in the case, to which reference is made.

*Magbee* and *Hart* for appellant.

*Gettis & Mitchell* for appellee.

BALTZELL, C. J., delivered the opinion of the Court.

This is a suit instituted upon two promissory notes given for the purchase of a negro man slave. The defence was,

1st. That Hancock, who made the purchase, was induced to enter into and make the said promises through and by means of the fraud, covin and misrepresentation of the said Tucker and others in collusion with him.

2d. That the notes were given for a negro man named Gadsden, and that, at the time of the sale, the vendor